1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **D.C. Number: CR F 05-0372 AWI** |
| | ) | |
| **Plaintiff-Appellee**, | ) | **Mag. Number:05-mj-0042 WMW** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **BLAIRE I. GUTHRIE,** | ) | **ORDER ON APPELLANT'S** |
| | ) | **APPEAL OF MOTION TO** |
| **Defendant-Appellant**. | ) | **DISMISS INDICTMENT** |
| _____ | ) | |

16

17      This is an appeal from a conviction in magistrate court for misappropriation of property

18   and conspiracy to misappropriate property occurring at Yosemite National Park ("the Park").

19   Appellant Blaire Guthrie ("Guthrie") entered a conditional plea of guilty, but reserved the right to

20   challenge the magistrate judge's denial of Guthrie's motion to dismiss.  The motion to dismiss

21   was based on an allegedly unreasonable and unnecessary delay of approximately 28 hours before

22   Guthrie was presented to a magistrate judge.  Guthrie argues that the motion to dismiss should

23   have been granted, that her conviction should be reversed, and that the charges against her be

24   dismissed.  Alternatively in her conclusion, Guthrie argues that all statements made should be

25   suppressed.  Guthrie's conviction will be affirmed.

26

27                                  **SCOPE OF REVIEW**

28      An appeal from a criminal conviction imposed by a Magistrate Judge lies with a "judge of

1  the district court and must first be brought in the district court before prosecution in the court of

2  appeals." United States v. Soolook, 987 F.2d 574, 575 (9th Cir. 1993); see also 18 U.S.C. §

3  3402.  The district court's review of the magistrate's judgment is governed by the same standards

4  as an appeal from a judgment of a district court to the court of appeals.  Fed. R. Crim. P.

5  58(g)(2)(D);United States v. McFarland, 369 F.Supp.2d 54, 56-57 (D. Me. 2005); United States

6  v. Fautanu, 751 F.Supp. 1420, 1421 (D. Haw. 1990); United States v. Ramirez, 555 F.Supp. 736,

7  738-39 (E.D. Cal. 1983).  In other words, the district court "is to apply the same scope of review

8  as a United States Circuit Court of Appeals would apply in considering an appeal of a judgment

9  from a United States District Court." United States v. Charrington, 285 F. Supp. 2d 1063, 1066

10  (S.D. Ohio 2003).  In the Ninth Circuit, the appellate court may affirm the district court's

11  decision on any grounds supported by the record.  United States v. Cortez-Arias, 403 F.3d 1111,

12  1114 n.7 (9th Cir. 2005), *as amended by*, 425 F.3d 547 (9th Cir. 2005); United States v. Allen,

13  153 F.3d 1037, 1045 (9th Cir. 1998).

14

15  **BACKGROUND**

16  On April 12, 2005, at approximately 10:00 a.m., Guthrie was arrested by National Park

17  Service law enforcement rangers without a warrant at the Curry Village gift shop for shoplifting

18  and stealing.  See E.R. at 47-48, 52-53.  Gurthrie worked at the giftshop as a cashier and the

19  giftshop manager had suspected Guthrie of stealing from her register.  See id.  The manager was

20  monitoring Guthrie's transactions through a computer and detected four instances of theft

21  between 8:00 a.m. and 9:00 a.m. See id.  The manager contacted security and while he was

22  waiting, observed Guthrie leave her register, take a $25 T-shirt from the retail area, and place the

23  shirt in a bag. See id.  Guthrie then handed the bag to Kimberly Williams, who in turn put the

24  bag in her purse and then left the store without paying for the shirt. See id.  The manager then

25  made a citizen arrest of Guthrie and Williams. See id.  Rangers arrived and accepted the

26  manager's citizen arrests. See id.  Ranger Visnovske took custody of Williams and Ranger

27

28  2

1  Horne took custody of Guthrie.  See id.  The rangers and Guthrie and Williams eventually left the

2  store and arrived at the Yosemite Holding Facility at approximately 11:00 a.m.  See id.

3      By 12:00 p.m., Guthrie had been booked and most of the administrative steps had been

4  completed.  See E.R. at 48, 53.  Guthrie was taken to an interview room and, at 12:01 p.m.,

5  Guthrie signed a *Miranda* waiver.  See id.  Guthrie admitted to the events surrounding her arrest

6  and explained how she would use the "F5" key to take money from the register.  See id.

7  However, the interrogation also covered incidents unrelated to the current misappropriation and

8  shoplifting episode.  See id. at 49, 53-54.  Guthrie had been asked why she took money from the

9  register and she indicated that she used the money for drugs and travel.  See id.  According to the

10  rangers, Guthrie made unsolicited and incriminating comments.  See id. at 49, 54.  According to

11  argument before the magistrate judge, Guthrie was questioned about drug rings in the Park and

12  prostitution activities at the Ahwahnee Hotel.  See id. at 82-83.  Guthrie's interview finally

13  concluded at approximately 1:30 p.m.  See E.R. at 49, 54.  Guthrie was returned to jail for further

14  processing.  See id.  The rangers then questioned Williams from approximately 2:30 p.m. to 3:00

15  p.m.  See id.  At the conclusion of her interview, Guthrie was not transported to the United States

16  Magistrate Judge for the Park, who was only a few hundred yards away and still in session on its

17  afternoon duty docket.

18      On April 12, 2005, the Park magistrate court convened at 10:00 a.m. and 1:30 p.m. to

19  conduct arraignments.  See E.R. at 75.  There is only one magistrate judge in the Park, and on

20  April 12, 2005, due to a family emergency, Magistrate Judge Wunderlich left the Park early at

21  approximately 2:30 p.m., and was unavailable for the rest of the day.  See id. at 75-76.  The

22  rangers did not attempt to locate another magistrate, for example a magistrate or district judge in

23  Fresno, but held Williams and Guthrie overnight.  The government representative of the National

24  Park Service and a federal public defender were both present at the 10:00 a.m. and 1:30 p.m.

25  court sessions.  See E.R. at 4.  At 3:30 p.m., Guthrie was told that she would be held overnight.

26  See id.  Guthrie's Federal Defender was not informed about Guthrie until approximately 5:00

27

28                                                           3

1    p.m., despite that Defender being present at the holding facility at both 3:30 p.m. and 4:00 p.m.

2    See id.

3           Guthrie was charged with two counts of misappropriation of property (one count

4    involving the T-Shirt and a second involving the $200) in violation of 36 C.F.R. §§ 2.30(a)(1),

5    (a)(3), and conspiracy to misappropriate property in violation of 18 U.S.C. § 371.  See E.R. at 11-

6    18.

7           On June 24, 2005, Guthrie filed a motion to dismiss the citation against her and argued

8    that the citation should be dismissed with prejudice because the extended delay in presenting her

9    to the magistrate violated the Fourth Amendment, Federal Rule of Criminal Procedure Rule 5(a)

10   ("Rule 5") and *Mallory v. United States*, 354 U.S. 449 (1957), the local Criminal Justice Act plan

11   ("local CJA Plan"), and the Fourth Amendment.  In a footnote, Guthrie requested in the

12   alternative that statements made during her pre-presentment interrogation.  A hearing on

13   Guthrie's motion to dismiss was held on August 5, 2005, and the Magistrate Judge denied the

14   motion at the hearing.  On September 26, 2005, Guthrie entered a conditional plea agreement.

15   Guthrie pled guilty to misappropriation of $200 in violation of 36 C.F.R. § 2.30(a)(1), and

16   misdemeanor conspiracy to misappropriate property in violation of 18 U.S.C. § 371.  See E.R. at

17   57-60.  The plea agreement provided that Guthrie reserved her right to appeal the denial of her

18   motion to dismiss and, if she prevailed, she could withdraw her guilty pleas.  See id. at 58.  On

19   September 27, 2005, the magistrate court sentenced Guthrie in accordance with the plea bargain:

20   six month summary probation, a $380 fine, two $10 statutory assessments, and two days in

21   custody with credit for two days time served.  See id. at 91.

22          Guthrie now appeals the denial of the motion to dismiss.  Due to an apparent incorrect e-

23   mail address, the Government did not receive notification of Guthrie's appeal.  In light of the

24   incorrect e-mail, this Court granted the Government's request to file a late opposition.  That

25   opposition has now been received.  No reply was filed by Guthrie.  For the reasons that follow,

26   Guthrie's conviction will be affirmed.

27

28                                            4

1

**ARGUMENTS**

2

*Appellant's Argument*

3   Guthrie argues that she was unreasonably and unnecessarily detained 28 hours before she

4   was presented to a magistrate judge.  Rule 5 requires that an arrested person be taken to a judicial

5   officer without unnecessary delay.  Under *Mallory*, an arrested individual must be arraigned as

6   quickly as possible so that he may be advised of his rights and probable cause may be

7   determined.  Similarly, the Fourth Amendment requires that anyone arrested for a crime without

8   a warrant is entitled to a prompt judicial review of probable cause.  Under *McLaughlin*, there is a

9   presumption of constitutionality for presentment delays of under 48-hours, but that presumption

10  may be overcome.  Finally, the CJA Plan for the Eastern District of California requires that

11  government prosecutors ask those in custody whether they are financially able to representation

12  and notify the Federal Public Defender Officer if the answer is no.  The Public Defender is then

13  to meet with the individual and if appointment seems likely, to arrange to have the person

14  promptly presented to a magistrate judge for determination of financial eligibility and

15  appointment of counsel.

16  Here, the delay in presentation was deliberate.  The delay was unreasonable because it

17  was for the purpose of interrogation and obtaining confessions, it occurred during the scheduled

18  time for arraignments, caused Guthrie to miss the opportunity to be arraigned on April 12, and

19  arraignments were occurring two buildings away from where Guthrie was being held.

20  Guthrie argues that the statements obtained from her during the delay are not critical to

21  the Government's case.  Further, there is an on-going failure to present defendants to the

22  magistrate in the Park.  In order to assure prompt presentment requirements are not abused,

23  reversal of the conviction and dismissal with prejudice is the only adequate remedy.  Otherwise,

24  Guthrie will be left without a remedy.

25  In the last sentence of her opening brief under the conclusion section, Guthrie states, in

26  the alternative, the case should be remanded with instructions to exclude from evidence any and

27

28

1  all incriminating statements alleged to have been made by her during the period.  This argument

2  is not developed in Guthrie's appellant brief.  However, in a footnote of her motion to dismiss,

3  Guthrie stated that, in the alternative, the court should find that her confession was involuntary

4  and inadmissible under 18 U.S.C. § 3501(c) due to the extended nature of the interrogation on

5  unrelated charges, the relative minor nature of the offenses, and the violation of the CJA Plan.

6      *Appellant's Opposition*

7      The government basically argues that the delay was reasonable under Rule 5 because it

8  was not for the purpose of obtaining evidence for the offenses charged and was in part caused by

9  logistics/the administrative process of the Park holding facility, Guthrie was presented within the

10 48-hour rule of *McLaughlin*, suppression and not dismissal is the remedy for violations of Rule

11 5, and that Guthrie validly waived her rights following *Miranda* warnings.

12     *Discussion*

13     The remedy for a violation of the Fourth Amendment's presentment requirement[1] and the

14 rule of *McLaughlin*[2]  is exclusion of evidence if it was "fruit of the poisonous tree."  Anderson v.

15 Calderon, 232 F.3d 1053, 1071-72 (9th Cir. 2000), *overruled in part on other grounds*, Bittaker

16 v. Woodford, 331 F.3d 715, 728 (9th Cir. 2003); United States v. Arnett, 2005 U.S. Dist. LEXIS

17 23741, 12-13 (E.D. Cal. 2005).  Similarly, the general remedy for a violation of Rule of Criminal

18 Procedure 5[3] and *Mallory* is exclusion of the evidence.  See United States v. Blue, 384 U.S. 251,

19

20     [1]The Fourth Amendment reads, "The right of the people to be secure in their persons, houses, papers, and
effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon

21  probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the
persons or things to be seized."  U.S. Const. Amend. IV.  The Supreme Court has held that the Fourth Amendment

22  requires prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention following
a warrantless arrest, i.e. individuals must be presented or brought before magistrates for a determination of probable

23  cause.  See County of Riverside v. McLaughlin, 500 U.S. 44,  47, 53 (1991); Gerstein v. Pugh, 420 U.S. 103, 114
(1979).

24
     [2]*County of Riverside v. McLaughlin*, 500 U.S. 44, 56-57 (1991) created a presumption that delays in the

25  presentment of arrestees of less than 48-hours are presumptively valid under the Fourth Amendment.

26     [3]Rule 5 in relevant part provides, "A person making an arrest within the United States must take the
defendant without unnecessary delay before a magistrate judge, or before a state or local judicial officer as Rule 5(c)

27  provides, unless a statute provides otherwise."  Fed. R. Crim. Pro. 5(a)(1)(A).

28                                        6

1  255 (U.S. 1966) (citing *Mallory* as an example of applying exclusionary rule); United States v.

2  Cardenas, 410 F.3d 287, 293 (5th Cir. 2005); United States v. Dyer, 325 F.3d 464, 470 n.2 (3d

3  Cir. 2003); United States v. Alvarez-Sanchez, 975 F.2d 1396, 1398 (9th Cir. 1992), *rev'd on*

4  *other grounds*, 511 U.S. 350 (1994); Studley, 783 F.2d at 937 n.2; Bayless v. United States, 381

5  F.2d 67, 70-71 (9th Cir. 1967); United States v. Savchenko, 201 F.R.D. 503, 506-07 (S.D. Cal.

6  2001).  Some authority suggests that dismissal for extreme or egregious violations of Rule 5 may

7  be appropriate.  See United States v. Osunde, 638 F.Supp. 171, 176-77 (N.D. Cal. 1986)

8  (granting dismissal where defendant was held for 106 days before presentment); cf. United States

9  v. Jernigan, 582 F.2d 1211, 1214 (9th Cir. 1978) (despite deliberate delay, refusing to grant

10  drastic remedy of reversal of conviction and dismissal of indictment given presentment after 3 to

11  4 days from arrest);  but see Savchenko, 201 F.R.D. at 507-08.

12      Assuming that dismissal is an available remedy and that Rule 5 was violated, the facts of

13  this case do not show an extreme or egregious violation of Rule 5.[4]  Although not dispositive, it

14  is undisputed that Guthrie was presented to a judicial officer within 48 hours of her arrest.  See

15  E.R. at 7; cf. McLaughlin, 500 U.S. at 56-57.  Further, the evidence does not suggest that the

16  rangers were aware that the Park's Magistrate Judge would not be available after 2:30 p.m. on

17  April 12, 2005, since the Magistrate Judge had to leave early due to a family emergency.  See ER

18  at 75-76.  The approximately 28 hour delay is nowhere near the 106 day delay in *Osunde* and is

19  well less than the 3 to 4 day deliberate delay in *Jernigan* that was found to not warrant dismissal.

20  Cf. Jernigan, 582 F.2d at 1214; Osunde, 638 F.Supp. at 176-77.  Given that suppression of

21  evidence is the general remedy for Fourth Amendment and Rule 5/*Mallory* violations, and that

22

23      [4]The Court notes that the Government cites *United States v. Frazier*, 419 F.2d 161, 1166 (D.C. Cir. 1969)
   for the proposition that a *Miranda* waiver also waives Rule 5/*Mallory* rights.  The Ninth Circuit has also held that a
24  valid *Miranda* waiver also waives Rule 5/*Mallory* rights.  See United States v. Childs, 944 F.2d 491, 496 (9th Cir.
   1991); United States v. Binder, 769 F.2d 595, 598 (9th Cir. 1985), *disapproved on other grounds*, United States v.
25  Morales, 108 F.3d 1031 (9th Cir. 1997); United States v. Indian Boy X, 565 F.2d 585, 591 (9th Cir. 1977); United
   States v. Mandley, 502 F.2d 1103, 1105 (9th Cir. 1974); United States v. Woods, 468 F.2d 1024, 1026 (9th Cir.
26  1972); United States v. Howell, 470 F.2d 1064, 1067 n.1 (9th Cir. 1972); United States v. Cluchette, 465 F.2d 749,
   755 (9th Cir. 1972); United States v. Lopez, 450 F.2d 169, 170 (9th Cir. 1971).  Neither the Government nor Guthrie
27  cite or discuss any of these cases.

28                                                7

1   there is an absence of extreme or egregious delay, the Magistrate Judge properly denied Guthrie's

2   requested dismissal.[5]

3        With respect to any violation of the local CJA Plan, the Court does not find that this

4   argument has been adequately developed.[6]  Neither party cites authority for what the proper

5   remedy may be for such a violation.  Guthrie does not argue that any Sixth Amendment rights

6   have been violated.  In the context of a violation of the Sixth Amendment right to counsel, such

7   "deprivations are subject to the general rule that remedies should be tailored to the injury

8   suffered from the constitutional violation and should not unnecessarily infringe on competing

9   interests."  United States v. Morrison, 449 U.S. 361, 364 (U.S. 1981).  The general remedy is to

10  suppress the evidence or to order a new trial if the evidence has been wrongfully admitted and

11  the defendant convicted.  Id. at 365.  "[A]bsent demonstrable prejudice, or substantial threat

12  thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have

13  been deliberate."  Id.  If the normal remedy for violations of the Fourth Amendment, the Sixth

14  Amendment, and Rule 5 is exclusion of evidence and not dismissal of a case, see id.; Blue, 384

15  U.S. at 255; Anderson, 232 F.3d at 1071-72; Studley, 783 F.2d at 937 n.2, then the Court does

16

17

18

19  [5]In *Jernigan*, the Ninth Circuit did state, "Our reading of the record persuades us that agent Horn
    deliberately delayed arresting Jernigan until a time when, as he well knew, Jernigan would not be able to go before a
    magistrate, have bail reset, and be released. We deplore this kind of behavior, and its repetition may lead us to
20  invoke the drastic remedy, dismissal of the indictment, that Jernigan asks us to invoke."  However, Guthrie  has not
    presented evidence or shown the type of deliberate conduct condemned in *Jernigan*.

21
    [6]The Eastern District of California CJA Plan provision relied upon by Guthrie is General Order No. 323 at
22  Ch. IX(A) and may be found at http://www.caed.circ9.dcn/newintranet/Documents/General_orders/323.pdf.  This
    portion the local CJA Plan reads:

23
    Federal law enforcement and prosecutorial agencies, probation officers, and pretrial services officers in this district,
24  and those acting on their behalf, shall promptly ask any person who is in custody, or who otherwise may be entitled
    to counsel under the CJA, whether he or she is financially able to secure representation, and shall, in such cases in
25  which the person indicates that he or she is not able, notify the Federal Public Defender Office, which shall assign a
    lawyer to discuss with the person the right to representation and right to appointed counsel, and if appointment of
26  counsel seems likely, assist in the completion of financial affidavit (CJA Form 23) and arrange to have the person
    promptly presented before a magistrate judge of this Court for determination of financial eligibility and appointment
27  of counsel.

28                                              8

1   not find that dismissal would be an appropriate remedy for a violation the local CJA Plan.[7]

2       With respect to Guthrie's alternative request for suppression,[8] the argument is only one

3   sentence at the end of her appellant brief.  Nevertheless, the argument was more developed in the

4   motion to dismiss and at the hearing on the motion to dismiss.  The motion to dismiss argued that

5   suppression of statements should occur because her confession was involuntary and inadmissible

6   under 18 U.S.C. § 3501(c) due to the extended nature of the interrogation on unrelated misdeeds,

7   the relative minor nature of the offenses, and the violation of the CJA Plan.  At the motion to

8   dismiss hearing, the following exchange occurred:

9   **Mr. Cohen:**    I think that under the specific circumstances of this particular detention, which is
                why we're arguing it here, whereas we're not arguing it every single time it
10               happens, it was unreasonable, and the result should be if not outright dismissal,
                which I think Ms. Leonetti acknowledges in her papers is a fairly extreme
11               sanction, at least suppression of any statements that Miss Guthrie or Miss
                Williams may have made during their custodial interrogation.[9]

12

13  **The Court:**    You're referring to statements made regarding a larger theft-related rings or --

    **Mr. Cohen:**    Yes, Your Honor.
14

15  E.R. at 73.  Thus, as argued before the Magistrate Judge, the alternative suppression request

16  appears to have dealt with the questioning of extraneous crimes.  However, Guthrie pled guilty to

17  misappropriation of $200 and conspiracy to misappropriate a T-shirt, and not to any "extraneous

18  crimes" such as a larger theft ring or drugs or prostitution.  See E.R. at 57-60.  Arguments or

19  _____

20      [7]Also, it is not clear that the CJA Plan was violated.  The Federal Defender's Office was informed in the
    afternoon of April 12, 2005, that Guthrie was in custody, see E.R. at 4, Guthrie appears to have met with a Federal
21  Defender at 5:00 p.m. on April 12, 2005, see id., she was represented by a Federal Defender throughout the
    proceedings before the Park magistrate court, and continues to be represented by a Federal Defender.  Moreover, at
22  12:01 p.m., at a time when most of the administrative procedures had been completed, Guthrie signed a *Miranda*
    waiver which informed her that a counsel would be appointed if she could not afford one.  See id. at 43, 48, 53.

23
        [8]In reviewing a denial of a motion to suppress after conviction, the evidence is viewed in the light most
24  favorable to the government, and if no findings of fact were made by the lower court, the reviewing court will uphold
    the denial of the motion to suppress if there is a reasonable view of the evidence that will sustain it.  See United
25  States v. Davis, 332 F.3d 1163, 1167 (9th Cir. 2003); United States v. Henry, 615 F.2d 1223, 1230 (9th Cir. 1980).

26      [9]Ms. Leonetti is the Federal Defender who filed the motion to dismiss and who is Guthrie's counsel on this
    appeal.  Mr. Cohen, also from the Federal Defender's Office, appeared for, and argued the motion on behalf of,
27  Guthrie at the hearing.  See E.R. at 64-65.

28                                                      9

1   theories not advanced in a proceeding below generally cannot be made on appeal.  See United

2   States v. Keesee, 358 F.3d 1217, 1219-20 (9th Cir. 2004); United States v. Patrin, 575 F.2d 708,

3   712 (9th Cir. 1978).  To the extent that Guthrie is now arguing for the suppression of her

4   admissions regarding the $200 and T-shirt, it appears she may be making an argument that was

5   not made to the court below.

6          However, even if new arguments for suppression of all statements are not being made and

7   have not been waived, Guthrie argued in her motion that suppression was proper under 18 U.S.C.

8   3501(c).  That section provides:

9          In any criminal prosecution by the United States . . . a confession made or given
           by a person who is a defendant therein, while such person was under arrest or
10         other detention in the custody of any law-enforcement officer or law-enforcement
           agency, shall not be inadmissible solely because of delay in bringing such person
11         before a magistrate . . . if such confession is found by the trial judge to have been
           made voluntarily and if the weight to be given the confession is left to the jury and
12         if such confession was made or given by such person within six hours
           immediately following his arrest or other detention: Provided, That the time
13         limitation contained in this subsection shall not apply in any case in which the
           delay in bringing such person before such magistrate or other officer beyond such
14         six-hour period is found by the trial judge to be reasonable considering the means
           of transportation and the distance to be traveled to the nearest available such
15         magistrate or other officer.

16   18 U.S.C. § 3501(c).

17          In determining voluntariness for purposes of 18 U.S.C. § 3501(c), a court:

18         [S]hall take into consideration all the circumstances surrounding the giving of the
           confession, including (1) the time elapsing between arrest and arraignment of the
19         defendant making the confession, if it was made after arrest and before
           arraignment, (2) whether such defendant knew the nature of the offense with
20         which he was charged or of which he was suspected at the time of making the
           confession, (3) whether or not such defendant was advised or knew that he was
21         not required to make any statement and that any such statement could be used
           against him, (4) whether or not such defendant had been advised prior to
22         questioning of his right to the assistance of counsel; and (5) whether or not such
           defendant was without the assistance of counsel when questioned and when
23         giving such confession.  The presence or absence of any of the above-mentioned
           factors to be taken into consideration by the judge need not be conclusive on the
24         issue of voluntariness of the confession.

25   18 U.S.C. § 3501(b).  Additionally, the Ninth Circuit has held that the "desire of the officers to

26   complete the interrogation is, perhaps, the most unreasonable excuse possible under § 3501(c)."

27

28                                                  10

1  United States v. Wilson, 838 F.2d 1081, 1087 (9th Cir. 1988).  However, it is not necessarily

2  unreasonable for officers to complete administrative procedures prior to presenting a defendant

3  to a magistrate.  See Kanekoa v. City and County of Honolulu, 879 F.2d 607, 611 (9th Cir.

4  1989).  Administrative steps include "procedures which provide the police with basic

5  information from the suspect" and may include an interview.  Id.  An interview may inform the

6  police of the suspect's identity, residence, competence, and whether it is safe to release the

7  suspect pending further proceedings.  Moreover, an interview may inform the police that the case

8  is no longer worth pursuing.  It provides an early opportunity for the suspect to exculpate

9  himself."  Id.  Administrative police interviews do not violate the Fourth Amendment "if they

10  [are] not for the purpose of building a case."  Id.

11        In this case, the Magistrate Judge did not expressly discuss the suppression request under

12  18 U.S.C. § 3501.  However, the evidence and argument presented to the Magistrate Judge

13  indicated that Guthrie: (1) was taken into custody at approximately 10:00 a.m.; (2) she arrived at

14  the Park holding facility at 11:00 a.m.; (3) she had been booked and most of the administrative

15  procedures were completed at approximately 12:00 p.m.; (3) she was taken to an interview room

16  and read *Miranda* warnings; (4) she stated that she understood and agreed to answer questions

17  and did not ask for an attorney; (5) she signed a *Miranda* waiver at 12:01 p.m.; (6) she admitted

18  the events surrounding her arrest at the beginning of the interview; (7) she volunteered other

19  information despite efforts to stop the interview by the rangers; (8) the interview ceased at

20  approximately 1:30 p.m.; and (9) she was presented to the Magistrate Judge the following day at

21  1:08 p.m.  See E.R. at 43, 47-48, 53-54, 86.

22        From this evidence, it is unclear what the purpose of the interview was.  That the

23  administrative procedures had not yet been completed and that the rangers "began the interview,"

24  see E.R. at 48, 53, tends to suggest an administrative interview as envisioned by *Kanekoa*, that

25  the officers asked questions to establish motive, however, suggests interrogation as condemned

26  in *Wilson*.  See E.R. at 49, 54.  However, the evidence indicates that Guthrie made the

27

28                                                    11

1   admissions surrounding her arrest for misappropriation and conspiracy approximately a little

2   more than 2 hours after her 10:00 a.m. detention, even though the total time between detention

3   and presentment was approximately 28 hours.[10]  Guthrie did not have an attorney present during

4   the 12:00 p.m. to 1:30 p.m. interrogation/interview.  It appears that Guthrie understood that she

5   was suspected of misappropriation of $200 and the T-shirt since she admitted to the events

6   surrounding her arrest and she was in custody for that conduct.  Guthrie had been advised of her

7   right to counsel and to have counsel present during questioning and that counsel could be

8   appointed if she could not afford one.  Guthrie was also advised that she had the right to remain

9   silent, that anything she said could be used against her in court, and that, even if she decided to

10  answer without a lawyer, she had the right to stop answering at anytime until she spoke with a

11  lawyer.  Of the factors listed under 18 U.S.C. § 3501(b), only the absence of counsel appears to

12  weigh in favor of a finding of involuntariness.  The remaining factors all suggest voluntariness.

13          To the extent that Guthrie challenged only admissions relating to crimes other than

14  misappropriation of $200 and conspiracy to misappropriate the T-shirt (as indicated at oral

15  argument on the motion), neither reversal nor remand is appropriate because Guthrie pled guilty

16  to only misappropriating $200 and conspiracy to misappropriate the T-shirt.  To the extent that

17  Guthrie has not waived a challenge to her apparent admission of misappropriating the $200 and

18  conspiracy to misappropriate the T-shirt, Guthrie argued that suppression was appropriate under

19  18 U.S.C. § 3501(c).  However, the confession appears to have occurred within a little over 2

20  hours of her detention, and the only factor that favors a finding of involuntariness under the 18

21  U.S.C. § 3501(b) factors is the absence of counsel.  Since the apparent confession was made

22  within the 6 hour safe harbor of 18 U.S.C. § 3501(c), and the evidence does not suggest

23  involuntariness under 18 U.S.C. § 3501(b), denial of the request to suppress Guthrie's confession

24  regarding the $200 and the T-shirt , which was made as an alternative and within the motion to

25

26

27      [10]The Court is unaware of any further interviews, statements, or confessions that Guthrie may have made, other than those occurring between 12:00 p.m. and 1:30 p.m. on April 12, 2005.

28                                                    12

1  dismiss, was appropriate.

2

3                                    **CONCLUSION**

4        Guthrie argues that the Magistrate Judge erroneously denied her motion to dismiss

5  because her 28 hour detention without presentment to a judicial officer violated Rule 5, *Mallory*,

6  the Fourth Amendment, and the local CJA Plan.  However, dismissal is not the general remedy

7  for such violations and Guthrie has not shown that dismissal was appropriate.  In the alternative,

8  Guthrie argued that statements made during the pre-presentment period should be suppressed

9  under 18 U.S.C. § 3501(c).  At the motion to dismiss hearing, Guthrie's counsel appeared to limit

10 the requested suppression to statements made regarding extraneous offenses.  Since Guthrie pled

11 guilty to the offenses for which she was arrested (misappropriation of $200 and the conspiracy to

12 misappropriate a T-shirt) and not to any "extraneous offenses," neither reversal nor remand is

13 necessary.  If the suppression request was not limited and arguments regarding other statements

14 were not waived, the record shows that any confessions about the $200 and T-shirt were made

15 well within 18 U.S.C. § 3501(c)'s 6-hour safe harbor, and four of the five factors for considering

16 voluntariness under 18 U.S.C. § 3501(b) support a finding of voluntariness, given the evidence

17 that was before the Magistrate Judge.  Guthrie has not shown that the Magistrate Judge

18 erroneously denied the alternatively requested 18 U.S.C. § 3501(b) suppression.

19

20       Accordingly, IT IS HEREBY ORDERED that Appellant's conviction is AFFIRMED.

21

22 IT IS SO ORDERED.

23 **Dated:    April 18, 2007**                        **/s/ Anthony W. Ishii**
                                              UNITED STATES DISTRICT JUDGE

24

25

26

27

28                                          13